United States District Court
for the
Southern District of Florida

Marcia T. Dunn, as Chapter 7 Trustee
of the Bankruptcy Estate of Idelfonso
Perez, Appellant,

v.

Civil Case No. 18-23929-Civ-Scola

Idelfonso Perez, Appellee.

## Opinion Order Affirming Bankruptcy Court

Appellant Marcia T. Dunn (the "Trustee"), as the Chapter 7 Trustee of the bankruptcy estate of debtor-appellee Idelfonso Perez ("Perez"), appeals the Bankruptcy Court's orders (1) overruling her objection to Perez's claim of homestead exemption, (the "First Order," ECF No. 12-2 at pp. 143-51), and (2) denying her motion for reconsideration of same (the "Second Order," *id.* at pp. 174-75). Having considered the parties' submissions, the record in this case and the applicable law, the Court **affirms** the Bankruptcy Court.

1. **Factual Background**

On November 8, 2017, Perez filed a voluntary petition under Chapter 7, Title 11 of the United States Bankruptcy Code (the "Petition," ECF No. 12-2 at pp. 4-80), initiating the present proceeding. The Debtor listed his address as 10770 SW 43 St., Miami, FL 33165, which is a home owned by his mother (the "Mother's Residence"). (*Id.* at p. 5.) Perez further stated that he had not lived at any other address aside from the Mother's Residence within the three years prior to the date of filing the Petition. (*Id.* at p. 36.) These representations are consistent with Perez's drivers license and tax returns, which list the Mother's Residence as his address.

In the Petition and related schedules, Perez listed an ownership interest in real property located at 13212 NW 4th Terr., Miami, Florida 331651 (the "Marital Residence"). (*Id.* at p. 85.) The Marital Residence was conveyed to the Perez and his wife, Mileydi Rodriguez ("Rodriguez"), by Warranty Deed dated July 20, 2006. The Deed identifies the grantees as "Mileydi Rodriguez and Idelfonso Perez, her husband." (ECF No. 14 at 12:8-20.) Thereafter, the couple experienced marital issues and, to avoid "argu[ing] in front of [his] children," Perez was not living at the Marital Residence at the time he filed the Petition. (ECF No. 14 at 25:13-15 ("Yes, I was having difficulties, arguments, with my wife, and I decided to go to my mother's house."); *id.* at 37:17-20; *id.* at 41:12-

15.) But Rodriguez and the children remained at the Marital Residence. In his Petition, Perez claimed a homestead exemption for the Marital Residence under "Fla. Const. art. X, §4(a)(1); Fla. Stat. Ann. §§ 222.01 & 222.02," noting that his "[w]ife lives there" and that "[t]hey have been separated for a very long time (ECF No. 12-2 at pp. 10, 19.)

The § 341 Meeting of Creditors was held on December 13, 2017. At that meeting, in response to the Trustee's question "you have no intentions of moving back into that house [i.e. the Marital Residence]?" Perez responded "No." (ECF No. 14 at 30:8-10.) During an evidentiary hearing held by the Bankruptcy Court, Perez testified that he gave that response because he "was fighting at that point with my wife, and that's what came out." (*Id.* at 41:1-4.) Perez further testified that during the three years he lived at the Mother's Residence prior to filing the Petition, he desired to return to the Marital Residence and continued to visit his children at that home, even spending nights there on occasion. (*Id.* at 45:9-13, 50:11-18, 52:6-12.) In fact, Perez stated at the hearing that he moved back into the Marital Residence in or around February 2018. (*Id.* at 46:1-8.) The Bankruptcy Court found these facts in the First Order. (ECF No. 12-2 at p. 145.)

On February 20, 2018, the Trustee filed an objection to Perez's claimed homestead exemption in the Marital Residence. (*Id.* at pp. 133-140.) Specifically, the Trustee argued that Perez was not entitled to a homestead exemption because he did not reside at the Marital Residence at the time the Petition was filed, he had no intention of returning to the Marital Residence and he had abandoned the Marital Residence as his homestead. (*Id.*) Although not in the record here, the Bankruptcy Court found that Perez filed a response to the Trustee's objection "in which Debtor claimed that he and Rodriguez held title to the [Marital Residence] jointly." (*Id.* at pp. 144-45.) The Bankruptcy Court further found that Perez "did not specifically raise the issues of whether the [Marital Residence] is exempt under Florida's tenancy by the entireties ('TBE') law." (*Id.* at p. 145.)

On May 17, 2018, the Bankruptcy Court held the evidentiary hearing on the Trustee's objection. Both parties were represented by counsel, who thoroughly examined Perez on the factual basis supporting the Trustee's abandonment argument. (*See* ECF No. 14 at 52:24-53:1 (the Court "express[ing its] sympathy for the two dead horses lying out there that you guys have been beating on for an hour and 45 minutes.").) The Bankruptcy Court also used the hearing as an opportunity to question the parties on whether a tenancy by the entireties exemption exists due to the Marital Residence being owned by both Rodriguez and Perez, as her husband. (*E.g.*, *id.* at 12:22-13:8.) The Bankruptcy Court requested post-hearing submissions

from the parties on both the tenancy by the entireties issue and the issue of abandonment of the homestead. (*Id.* at 53:2-16, 54:6-55:4.) These submissions are not in the record on appeal, to the extent they exist at all.

### A. The Bankruptcy Court's Orders

On August 21, 2018, the Bankruptcy Court issued the First Order overruling the Trustee's objection. (ECF No. 12-2 at pp. 143-151.) The First Order was divided into two general sections: "Findings of Fact," (*id.* at pp. 144-45), and "Conclusions of Law," (*id.* at pp. 145-151). The Bankruptcy Court first considered whether "a deed granting ownership to [Perez] and Rodriguez create[s] a tenancy by the entireties that would support an exemption, or partial exemption?" (*Id.* at p. 145-47.) The Bankruptcy Court noted that the language of the deed "presupposes . . . that the [Marital Residence] is held as tenancy by the entireties." (*Id.* at p. 146.) But ultimately a determination on the tenancy by the entireties issue was found to be premature "[b]ecause the Trustee assert[ed that] she has not had adequate time to prepare to defend against such claim of exemption," among other issues. (*Id.* at p. 147.)

Next, the Bankruptcy Court turned to whether Perez abandoned any right to a homestead exemption in the Marital Property. After considering the entire record, including the live testimony of Perez at the evidentiary hearing, the Bankruptcy Court provided the following reasoned analysis in overruling the Trustee's objection on its abandonment theory:

> The Trustee argues that Debtor's testimony and actions are indicative of abandonment of the [Marital Residence] as his homestead. The Court disagrees. The Debtor's address on his tax returns and driver's license does not determine homestead; these documents accurately reflect the Debtor's address at the [Mother's Residence], as required by the respective forms. Although the Debtor represented he has been living at this mother's house for over 3 years, he stated at the hearing that he stayed with her because he was disgusted with his wife. However, the Debtor testified he visited the wife and minor children at the homestead, as they have continually resided there, and he even spent nights there from time to time during that period he was residing at his mother's house. The Court believes the Debtor's testimony at the hearing evidences he never had an intent to abandon the homestead where his minor children live, and he has never established or even sought to establish another homestead in place of the [Marital Residence].
>
> The Trustee urges the Court to interpret exemptions as of the Petition Date, and relies on the Debtor's statement at the

meeting of creditors (that he has no intention of returning to the [Marital Residence]) to support abandonment as of the Petition Date. However, statements made at the meeting of creditors are not necessarily determinative of Debtor's intentions as of the Petition Date; such statements are made over a month after filing and are no more indicative of intent on the Petition Date than other actions taken by the Debtor after the filing. In this instance, during the course of these proceedings, after stating he had no intention of moving back to the [Marital Residence], the Debtor actually moved back into the [Marital Residence] with Rodriguez and their minor children. The Court believes the Debtor may not have had a current plan or intention to move back to the [Marital Residence] when he attended his §341 meeting of creditors, but he did not have the intention to abandon the [Marital Residence]. Statements made at the meeting of creditors may be persuasive, but such statements may not be determinative of past intentions or future actions. The Court must look at the record as a whole and decide each case on the facts presented. While the Debtor stated at the meeting of creditors that he had no intention of moving back into the Real Property, he has since moved back into the Real Property with his family.

     The Court concludes from the testimony that, during the years the Debtor lived with his mother, he never intended to abandon the [Marital Residence] or to forsake it permanently. *Marsh*, 109 So. 2d at 38 (where head of house finds it necessary to absent himself from the homestead property for extended periods of time, there is no abandonment if he intends to return or has no clear intent to abandon). Debtor visited his children at the homestead and spent evenings over there as well, eventually reconciling with his spouse and moving back into the homestead.

     Contrary to the Trustee's assertions, and upon consideration of the testimony adduced at the evidentiary hearing, the evidence indicates that the Debtor took no affirmative steps to disassociate himself with the [Marital Residence]. Although the Debtor testified at the meeting of creditors that he moved his personal property into his mother's home, the Court does not believe that simply moving clothing and a television set into a bedroom at the mother's home establishes abandonment of the homestead, particularly when Debtor's minor children and wife still reside there, and the Debtor still visits and sleeps there, even if only occasionally. Although the Debtor may not have had an intention to immediately return to the [Marital Residence] as of the §341 meeting of creditors, the Debtor did not take affirmative steps to abandon the homestead where his wife and minor children reside and, in fact, has moved back into the homestead. The Court believes that finding a homestead exemption under the circumstances herein

promotes the stability and welfare of the state by securing to the Debtor a home for his family that is beyond the reach of creditors.

(*Id.* at 149-151.)

On September 4, 2018, the Trustee moved the Bankruptcy Court to reconsider the First Order. (ECF No. 12-2 at pp. 152-161.) The Trustee submitted that she "appreciate[d] the Court's rationale and legal analysis underpinning the [First] Order," but disagreed with it and requested the Court to "change its ruling and sustain the Trustee's Objection." (*Id.* at p. 152.) The motion sought relief under Fed. Rs. Civ. P. 59(e) and 60 to prevent "obvious injustice" and to remedy "fraud by [Perez]" based on his contradictory statements regarding his intention to return to the Marital Residence. (*Id.* at pp. 158-59.) The Trustee also requested the Bankruptcy Court to make findings of facts pursuant to Rule 52. The Bankruptcy Court denied the motion by the Second Order, findings the arguments raised were "wholly without merit" and an improper attempt to "reargue[]" the facts and legal conclusions underpinning the First Order. (*Id.* at pp. 174-75.)

### B. The Appeal

The Trustee timely appealed the First Order and Second Order. (ECF No. 1.) The Appellant's Brief (the "Brief") closely mirrors the motion for reconsideration in the Bankruptcy Court, and raises five arguments on appeal: (1) whether "[t]he Bankruptcy Court misapplied the evidence in this case," (ECF No. 20 at pp. 9-12); (2) whether "[t]he Bankruptcy Court clearly erred by ignoring relevant portions of the Perez's [sic] testimony," (*id.* at pp. 12-14); (3) whether "[t]he Bankruptcy Court should have granted reconsideration under Fed. R. Civ. P. 59," (*id.* at pp. 14-15); (4) whether "[t]he Bankruptcy Court should have granted reconsideration under Fed. R. Civ. P. 60," (*id.* at p. 15); and (5) whether "[t]he Bankruptcy Court should have issued new findings of fact," (*id.* at pp. 15-16).

Perez, who is proceeding *pro se* in this Court, filed a response to this appeal in the Bankruptcy Court, which the Court has considered. (*In re: Idelfonso Perez*, No. 17-23534-AJC, D.E. 79 (Bankr. S.D. Fla. Nov. 13, 2018).)

The Court heard oral argument on May 8, 2019.

### 2. Standard of Review

A bankruptcy court's "[c]onclusion[] of law [is] subject to *de novo* review." *In re Spiwak*, 285 B.R. 744, 747-48 (S.D. Fla. 2002) (Moore, J.) (citing *In re Calvert*, 907 F.2d 1069, 1070 (11th Cir.1990)). "Factual findings made by the bankruptcy court are subject to a clearly erroneous standard." *Id.* (citing *Continental Nat. Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1344

(11th Cir.1999)). Review of factual findings "is highly deferential; a factual finding is clearly erroneous only when we, after reviewing all the evidence are left with the definite and firm conviction that a mistake has been committed.'" *In re Haley*, 601 F. App'x 900, 909 (11th Cir. 2015) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)). "This deference extends both to findings based on witness credibility and factual findings based on documentary evidence." *Id.* Courts "cannot reweigh the evidence on appeal, even if we would have reached a different conclusion." *Id.* (citing *Anderson*, 470 U.S. at 573-74 ("This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.").

3. **Analysis**

For its first appellate argument, the Trustee contends that "the Bankruptcy Court misapplied the evidence in this case" in overruling the Trustee's objection. (ECF No. 20 at pp. 9-12.) Specifically, the Trustee argues that the Bankruptcy Court erred in the weight it gave certain evidence when determining whether Perez intended to return to the Marital Residence. (*Id.* at p. 12 ("The Bankruptcy Court failed to consider Perez's timing, which was clear error."). But the Trustee's "arguments fail here because [she] essentially asks us to reweigh the evidence, a task we cannot undertake" in an appellate capacity. *In re Haley*, 601 F. App'x at 910. "For starters," the Trustee "insists that" the timing of Perez's actions "should have been afforded more weight as evidence" of Perez's intent to return to the Marital Residence. *Id.* "But assigning weight to the evidence is a classic fact-finder function." *Id.* The Bankruptcy Court considered Perez's pre-Petition representations of residence on his driver's license and tax returns, as well as his listed residence on the Petition. (ECF No. 12-2 at p. 149.) Ultimately, however, the Bankruptcy Court found Perez's live testimony, and the credibility determinations flowing therefrom, "evidences he never had an intent to abandon the homestead where his minor children live, and he has never established or even sought to establish another homestead in place of the [Marital Residence]." (*Id.*) "Based on the conflicting testimony and evidence in this case, [the Court is] not left with a firm conviction that the [bankruptcy] court erred in finding" that Perez maintained the Marital Residence as his homestead. *In re Haley*, 601 F. App'x at 910. The Trustee's first argument is thus rejected. (ECF No. 20 at pp. 9-12.)

Similarly, the Trustee's second argument, that "the Bankruptcy Court committed clear error by ignoring the dubious change in Perez's testimony," is wrong as a matter of fact. (ECF No. 20 at p. 14.) In the First Order, the

Bankruptcy Court did, in fact, consider the conflicting statements made by Perez at the § 341 Meeting and evidentiary hearing regarding his intent to return to the Marital Residence. (ECF No. 12-2 at p. 149-150.) Weighing that evidence, the Bankruptcy Court found that the "[s]tatements made at the meeting of creditors may be persuasive, but such statements may not be determinative of past intentions or future actions." (*Id.*) The Bankruptcy Court considered the change in Perez's testimony and, after "look[ing] at the record as a whole," held for Perez. (*Id.*) That holding was the product of a thoughtful and well-reasoned analysis and supported by ample record evidence, including the live testimony of Perez. This Court is not left with a "definite and firm conviction that a mistake has been committed." *In re Haley*, 601 F. App'x at 910 (quoting *Anderson*, 470 U.S. at 573). The Trustee's second argument is rejected accordingly.

For the same reason, the Trustee's third and fourth arguments—that the Bankruptcy Court erred in declining to reconsider the First Order under Rules 59 and 60—are without merit. Rehashing the legal and factual arguments furthered in her objection, the Trustee submits that the Bankruptcy Court clearly erred in the Second Order by declining to remedy purported "manifest error of law and fact by the Bankruptcy Court" in the First Order. (ECF No. 20 at p. 14 (citing Rule 59(e)).) The Trustee also argues that the Bankruptcy Court erred in the denying reconsideration under Rule 60 by "reiterat[ing] its prior position [in the First Order], which was a misapplication of the facts and law." (ECF No. 20 at p. 15.) "Because we hold the [Bankruptcy] Court did not err" in its application of the facts and law, the Court "also affirm[s] the denial of [the Trustee's] Rule 59 and Rule 60 motion[]." *McDonough v. City of Homestead*, -- F. App'x --, 2019 WL 2004006, *3 (11th Cir. May 7, 2019).

In her fifth and final argument, the Trustee submits that the Bankruptcy Court "should have issued new findings of fact." (ECF No. 20 at pp. 15-16.) Rule 52(a)(1) provides that "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusion of law separately." Fed. R. Civ. P. 52. There is no dispute that the First Order contained separate sections for "Finding of Fact" and "Conclusions of Law." (ECF No. 12-2 at pp. 144-45.) Nonetheless, the Trustee argues that the "Bankruptcy Court comingled its conclusions of law and factual determinations in the [First Order]" and improperly made findings of Perez's intent to return to the Marital Residence in the Conclusions of Law section of that order. (ECF No. 20 at p. 16.) To the extent the Bankruptcy Court erred by not determining Perez's intent as a "Finding of Fact," any such error was harmless. The Trustee failed to identify any "substantial right"

affected by the form of the First Order and has abandoned her opportunity to do so by not developing that argument in the Brief. Fed. R. Civ. P. 61; *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

### 4.      Conclusion

For the foregoing reasons, the Court **affirms** First Order and Second Order of the Bankruptcy Court. All pending motions, if any, are denied as moot. The **Clerk** is directed to **close this case**.

**Done and ordered** in chambers, at Miami, Florida, on May 8, 2019.

_____
Robert N. Scola, Jr.
United States District Judge